# EXHIBIT "2"

```
 1                      R. MILLS
 2   reasonable accommodation request is?
 3          A.    I have a broad sense of what it
 4   is.
 5          Q.    So tell me what's your
 6   understanding of that.
 7          A.    When somebody may have an
 8   ailment, and they want some adjustments to
 9   be made based on that.
10          Q.    Okay.  What is the DOE policy
11   regarding a reasonable accommodation?
12          A.    The person files that through I
13   guess the medical unit, or some other unit,
14   and they review it, and make the decisions.
15          Q.    Okay.  To your knowledge, did
16   Ms. Wald ever made a reasonable
17   accommodation request?
18          A.    I think she did.
19          Q.    When was that?
20          A.    I don't know, because it wasn't
21   with me.
22               (Whereupon, accommodation
23                request form was marked as
24                Plaintiff's Exhibit 2 for
25                identification as of this date by the
```

```
 1                    R. MILLS
 2          Reporter.)
 3          Q.    Okay.  So I'm showing you now
 4   what has been marked as Plaintiff's Exhibit
 5   2 for identification.  Take a moment to
 6   review it.  Do you recognize this document?
 7          A.    No.
 8          Q.    What is this document?
 9          A.    This is a accommodation request
10   form.
11          Q.    Made by who?
12          A.    Karen Wald.
13          Q.    Okay.  Have you ever seen this
14   document before?
15          A.    No.
16          Q.    Is this the first time you see
17   this document?
18          A.    Yes.
19          Q.    What is your role in regard to
20   the reasonable accommodations?  Do you have
21   any role whatsoever?
22          A.    I guess a consultary role.  I
23   really don't make the final decision.
24   There's a special office that does that for
25   the DOE.
```

35

1                          R. MILLS

2   complaint?

3          A.     Yes.

4          Q.     So before you saw the

5   complaint, you knew that Ms. Wald made a

6   reasonable accommodation request?

7          A.     Yes.  I knew she made a

8   request.

9          Q.     But you never knew why,

10  correct?

11         A.     I don't know the details.  I

12  just know that she wanted something closer

13  to home.

14         Q.     But you never read the

15  accommodation request form?

16         A.     No.  That was never shared with

17  me.

18         Q.     Did you request it?

19         A.     No.

20         Q.     So you discussed about it, but

21  you never requested the document.  Is that

22  correct?

23         A.     That's not my place to review

24  the request.  As I shared with you, my

25  conversation was more about what scheduling

```
 1                    R. MILLS
 2    the date of this?
 3         A.    On this document it says
 4    8/26/2015.
 5         Q.    Thank you.  For the two boxes
 6    that you read, does anywhere does it say
 7    that Ms. Wald is requesting less hours?
 8         A.    The second box says reduce
 9    travel time with position or job hours for
10    conducive to adequate person stress.
11         Q.    Does it say that she's
12    requesting less hours?
13         A.    Not directly.
14         Q.    So the answer is no?
15         A.    All right.
16         Q.    You tell me.
17         A.    I guess it's no.
18               (Whereupon, schedule was marked
19          as Plaintiff's Exhibit 3 for
20          identification as of this date by the
21          Reporter.)
22         Q.    Okay.  I'm showing you now a
23    document that has been marked as
24    Plaintiff's Exhibit 3.  Please review it,
25    and let me know when you've read it.  Tell
```

1                          R. MILLS

2          Q.    Well you said Mr. Brewton did,

3    correct?

4                 MR. REITER:  Objection.

5          Q.    You can answer.

6          A.    You said Mr. Brewton contacted

7    me about a request.  If you're saying Mr.

8    Brewton was acting on behalf of Ms. Wald,

9    yes.

10         Q.    So the answer is yes?

11         A.    If Mr. Brewton was acting on

12   her behalf.

13         Q.    Well Mr. Brewton approached to

14   you regarding Karen Wald, correct?

15         A.    Yes.

16         Q.    Do you know who is Patty

17   Grispino?

18         A.    Yes.

19         Q.    Who is she?

20         A.    She's a district UFT rep.

21         Q.    Do you know who is Tom Bennett?

22         A.    No.

23         Q.    You never heard of him before?

24         A.    My attorney said that name to

25   me.

```
 1                    R. MILLS
 2              MR. REITER:  We don't talk
 3         about communications between us, but
 4         you can answer the question.
 5       A.    I don't know him.
 6       Q.    I'm only asking you.  I'm not
 7    asking whoever told you.  If you know who
 8    Tom Bennett is.
 9       A.    No.
10       Q.    So you have never heard of Tom
11    Bennett?
12       A.    No.
13       Q.    Okay.  Did Patty Grispino ever
14    speak to you regarding Ms. Wald's
15    reasonable accommodation request?
16       A.    No.
17       Q.    She never had a conversation
18    regarding Ms. Wald?
19       A.    None that I can recall about a
20    request.
21       Q.    So if you had a conversation
22    with Patty Grispino about Ms. Wald, what
23    was it about?
24              MR. REITER:  Objection.
25       A.    I don't know what kind of
```

```
 1                    R. MILLS
 2    from HR Connect, regarding her request for
 3    a medical accommodation.
 4         Q.    Okay.  Do you have any
 5    involvement with this document?
 6         A.    No.
 7         Q.    Any involvement with that
 8    decision?
 9         A.    No.
10         Q.    So draw your attention again to
11    Exhibit 1, which is the complaint.  Please
12    look at paragraph 15, which is located on
13    page four.  Now, let me ask you.  Did you
14    know that during Ms. Wald's job assignment,
15    she caught pneumonia three times?
16         A.    No.
17         Q.    How come you didn't know that?
18         A.    I don't know those things.
19    That's the principal who would be aware of
20    teachers.  And as a superintendent, I don't
21    supervise the teachers, so I don't know who
22    is absent, the reason for the absence.
23         Q.    Okay.  Did you ever inquire
24    about Ms. Wald's health after she made the
25    reasonable accommodation request?
```

```
 1                    R. MILLS
 2         A.    No.
 3         Q.    Do you know who is Irene Rosa?
 4         A.    Yes.  She was the chapter chair
 5   after Ms. Wald.
 6         Q.    What other position did she
 7   hold for the Department of Education?
 8         A.    She was a teacher, and then she
 9   became the chapter chair.
10         Q.    Was she provided with her
11   request to schedule change?
12               MR. REITER:  Objection.
13         A.    There was no request for a
14   schedule change from Ms. Rosa.  Ms. Rosa
15   reassigned her position as the UFT chapter
16   chair.  As a UFT chapter chair, you have
17   six hours of non-teaching responsibility.
18   So, if you resign your position as the UFT
19   chapter chair, then you have to be given
20   six more hours of teaching responsibility.
21         Q.    Who gives those hours to her?
22         A.    That's a determination made
23   with the principal based on what's
24   available within the school, or need within
25   the school.
```