**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
17-CV-3560 (WFK)(SJB)

X--------------------------------------------------------------------------------X

KAREN WALD

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, and
THE CITY SCHOOL DISTRICT OF
THE BOARD OF EDUCATION
OF THE CITY OF NEW YORK

Defendant.

X--------------------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, P.C.

s/ Natalia Kapitonova, Esq.
NATALIA KAPITONOVA, ESQ.
*Attorneys for Plaintiff*
111 John Street, 22nd Floor
New York, New York 10038
cnk@stewartkarlin.com

# TABLE OF CONTENTS

*Item*                                                                              *Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii-v

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-6

       Chronological Statement of Relevant events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6-22

       POINT I: DEFENDANT HAS THE BURDEN OF SHOWING THAT
       THERE ARE NO GENUINE MATERIAL ISSUES OF FACT AND
       PLAINTIFF IS ENTITLED TO ALL FAVORABLE INFERENCES . . . . . . . . . . . .  6-8

       POINT II: MATERIAL TRIABLE ISSUES OF FACT EXIST THAT
       PRECLUDE SUMMARY JUDGMENT AS DEFENDANT DID NOT
       REASONABLY ACCOMMODATE PLAINTIFF'S CHRONIC
       LYMPHOCYTIC LEUKEMIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8-18

             A. Plaintiff set forth a prima facie case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8-9

             B. Defendant did not grant Plaintiff any accommodation . . . . . . . . . . . . . . . .  9-13

             C. Defendant refused to engage in the interactive process,
             thus Plaintiff could not have abandoned a process that Defendant
             refused to engage in . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13-18

       POINT III: PLAINTIFF WAS RETALIATED AGAINST FOR
       REQUESTING A REASONABLE ACCOMMODATION FOR HER
       CHRONIC LYMPHOCYTIC LEUKEMIA BY BEING
       CONSTRUCTIVELY DISCHARGED WHEN SHE WAS

PLANNING TO RETIRE YEARS LATER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-22

    A. Retaliation under the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

    B. Constructive Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

*Item*                                                                    *Page*

Laws and Statutes

42 U.S.C. § 12111(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12112(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *sic passim*

Civil Practice Law and Rules ' 3212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cases

Alicea Rosado v. Garcia Santiago,
562 F.2d 114, 119 (1st Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Assaf v. Ropog Cab Corp.,
153 A.D.2d, 520, 544 N.Y.S. 2d 834 (1st Dept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Barnett v. U.S. Air, Inc.,
228 F.3d 1105, 1116 (9th Cir.2000)
rev.'d on other grounds 535 U.S. 391,  122 S.Ct. 1516,  152 L.Ed.2d 589 (2002) . . . . . . . . . . 14

Berhsaw v. Altman,
100 A.D.2d 642, 473 N.Y.S.2d 72 (3rd Dept. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Brady v. Wal-Mart Stores, Inc.,
531 F.3d 127, 134 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Celotex Corp. v. Catrett,
477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . 7

Chertkova v. Connecticut General Life Insurance Co.,
92 F.3d 81 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cifra v. Gen. Elec. Co.,

252 F.3d 205, 216 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cosgrove,
9 F.3d at 1039 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cravens,
214 F.3d at 1020-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Elzer v. Nassaul County,
111 A. D. 2d 212, 489 N. Y.S. 2d 246 (2nd Dept. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Esteve v. Abad,
271 A.D.2d 725, 68 N.Y.S.2d 322 (1st Dept. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Fjellestad,
188 F.3d at 952 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Graves v. Finch Pruyn & Co., Inc.,
457 F.3d 181, 184 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Herman v. Powers,
103 A. D. 2d 992, 479 N.Y.S.2d 846 (3rd Dept. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hohider v. United Parcel Serv., Inc.,
574 F.3d 169, 194 (3d Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hotirigan v. McGarry,
106 A.D.2d 845, 484 N.Y.S.2d 243 (3rd Dept. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jackson v. Elmhurst Hosp. Ctr.,
No. 10 Civ. 5248, 2012 U.S. Dist. LEXIS 34508 (E.D.N.Y. March 14, 2012) . . . . . . . . . . . . . 19

Jacques v. DiMarzio, Inc.,
386 F.3d 192, 198 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lopez v. SB Thomas, Inc.,
831 F.2d 1184 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Martin v. Citibank,
N.A., 762 F.2d 212, 216-17 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iv

McBride v. BIC Consumer Prods. Mfg. Co.,
583 F.3d 92, 97 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 14

Mengine v. Runyon,
114 F.3d 415, 420-21 (3d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Noll v. Intern. Business Machines Corp.,
787 F. 3d 89, 94 (2d Cir 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pellier v. British Airways, Plc.,
2006 WL 132073 *4 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Pena v. Brattleboro Retreat,
702 F.2d 322, 325-26 (2d Cir. 1983)(ADEA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Phillips v. Kantor & Co.,
338 N.Y.S.2d 882, 31 N.Y.2d 307 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rodal v. Anesthesia Group of Onondaga, P. C.,
369 F.3d 113, 118 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sillman v. Twentieth Century Fox F. Corp.,
3 N.Y.2d 395, 165 N.Y.S.2d 498 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sista v. CDC Ixis N. Am., Inc.,
445 F.3d 161, 169 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Taylor v. Phoenixville Sch. Dist.,
184 F.3d 296, 317-20 (3d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Diebold Inc.,
369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Weinberger v. Hynson,
412 U.S. 609 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Weiss v. Garfield,
21 A.D.2d 156, 249 N.Y.S.2d 458 (3rd Dept. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wernick v. FRB,
91 F.3d 379, 385 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
KAREN WALD,

         Plaintiff,

                                                       17-CV-3560 (WFK)(SJB)

     -against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, and
THE CITY SCHOOL DISTRICT OF
THE BOARD OF EDUCATION
OF THE CITY OF NEW YORK

         Defendants,
--------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

       Plaintiff submits this Memorandum of Law in opposition to Defendants' Motion for Summary Judgment.  In essence, the admissible evidence demonstrates there are material issues of fact on whether Plaintiff's reasonable accommodation could have been granted.  In addition, there are material issues of fact indicating that the DOE did not partially accommodate Plaintiff but rather denied the full accommodation as the only accommodation granted to Plaintiff was a reduction of her working hours which she did not request at any time.  Therefore, summary judgment is not appropriate.

## STATEMENT OF FACTS

       Plaintiff filed this action as a result of being discriminated against due to her disability (chronic lymphocytic leukemia). Plaintiff was employed by the New York City Department of Education (DOE) as a teacher in the Adult Education Program for over twenty years until her

1

constructive termination on December 9, 2015. Plaintiff was constructively terminated as she was left with no other choice but to retire due to the DOE's denial of her reasonable accommodation request which consisted in a more compacted schedule of hours in order to reduce her heavy commute, or in allowing her to teach in a location closer to her home.  As set forth, none of these reasonable requests were granted. (Def. Exh "A" ¶ 6-9, Pl. Decl. ¶ 1-4).

**Chronological Statement of Relevant events**

Plaintiff suffers from chronic lymphocytic leukemia which was diagnosed in 2013, her disability impacts her major life activities including having a compromised immune system, fatigue, and susceptibility to getting respiratory infections.  During the summer of 2015, her condition worsened and Plaintiff began chemotherapy. (Pl. Decl. ¶ 5- 6)

In the Spring of 2015, Plaintiff received copies of the retirement paperwork of two teachers who had completed the retirement submission, such as Evan Ginzburg who informed her that he had a service retirement application receipt dated May 07, 2015.  As per a prior year conversation with Superintendent Mills' about schedule availability of retirees, Plaintiff gave up her schedule and went to the hiring hall so that she could obtain the new schedules available of the newly retired teachers.  Plaintiff had previously won a long arbitration that permitted her to have more hours added to her schedule.  However, to her surprise, the now potentially available retirees' schedules were not made available in the hiring hall by Ms. Mills.  Plaintiff was shaken this happened because of her careful planning and knowledge of the program.   (Pl. Decl. ¶ 7- 9)

Plaintiff was the UFT union chapter leader for three years and Ms. Mills had personal animosity against her because as the UFT chapter leader not only did Plaintiff represent teachers and teachers' issues, but she led the teachers in several arbitration suits against Ms. Mill's administration and management of the program, which almost entirely were decided in the

2

teachers' favor.  Furthermore, in one of the cases the arbitrator cited harassment against Plaintiff. Subsequently, after her retirement, many of these issues were ultimately modified or decided in the teacher's favor. Given that the retirees' schedules were not posted in the hiring hall, Plaintiff then lost her previous schedule and she was put in the impossible situation of making the selection of what was made available to her by accepting a split work schedule in two locations (Brooklyn and Manhattan).  (Pl. Decl. ¶ 10-12).  Plaintiff did not choose her own schedule, but rather she picked the only hours available to her at the hiring hall.  (Pl. Decl. ¶ 13)

In the summer of 2015, Plaintiff's condition worsened as she began chemotherapy medication.  This was not foreseen. (Def. Exh "A" ¶8, Pl. Decl. ¶ 14).  Due to her very ill state, on August 26, 2015 (before the new semester started) she made a reasonable accommodation request to the DOE, specifically requesting "*reduced travel time with a position closer to her home or job hours more conducive to adequate rest/ decreased stress- will prevent absences at work as allows MD visits in her free time*."  (Def. Exh "I", Pl. Decl. ¶ 15).  Plaintiff's request form listed her "disability, limitation(s) and job function(s) unable to perform:" as "chronic lymphocytic leukemia on oral chemotherapy daily- decreased work commute as pt is fatigued and at high risk for infection with stressed schedule." (Def. Exh "I", Pl. Decl. ¶ 15-16).

This reasonable accommodation request posted no hardship on the DOE.  Even her UFT representative Patricia Crispino advised her that the request will impose no hardship as Ms. Mills had the ability and power to changes schedule and grant the reasonable accommodations.   (Pl. Decl. ¶ 17).  In addition, Plaintiff only requested either a schedule in schools closer to her home, or more consolidated hours.   (Def. Exh "I", Pl. Decl. ¶ 18).  Plaintiff also applied for a hardship transfer on September 26, 2015 for the same medical reasons.  (Pl. Decl. ¶ 19).

Plaintiff resides on 17th Street and 3rd Avenue in Manhattan and she had her job assignment with the DOE in Bedford-Stuyvesant, Brooklyn for five mornings per week from 9am to 1:40pm and then from 5pm to 8:40pm (4 nights per week) at a school location on 35th street and 8th Ave. Commuting was about 3 or more hours/day which allowed little "recuperation "time or time for medical appointments. (Def. Exh "A" ¶ 14, Def. Exh "E", Pl. Decl. ¶ 20)

The DOE was aware that Plaintiff was unable to perform this assignment before the semester started, yet still refused to accommodate her request for an assignment with a full-time consolidated hour or in a location closer to home.  (Def. Exh "A" ¶ 15, Pl. Decl. ¶ 21).  Ms. Mills could have changed Plaintiff's schedule around as she did so in previous years and chose not to do so.  For example, Ms. Mills had the ability to extend hours in one location, allocate hours from per session teachers and create another class when needed. (Pl. Decl. ¶ 22)

In addition, when Plaintiff requested the accommodation, the semester had not yet started. (Decl. ¶ 23).  By letter dated October 8, 2015, Plaintiff's medical accommodation request was not approved.  Although the medical accommodation was approved by the medical department, Ms. Mills did not consolidate Plaintiff's hours nor gave her classes closer to home which would reduce her commute.  Ms. Mills did not engage in the interactive process to reasonably accommodate Plaintiff. (Pl. Decl. ¶ 24).  The DOE instead reduced Plaintiff's hours, something she was not actually requesting. (Def. Exh "A" ¶ 12, Pl. Decl. ¶ 25).  Plaintiff's request for an assignment to school "closer to home" was not accommodated and her hours were not compacted. (Pl. Decl. ¶ 26).  Because of the failure to reasonably accommodate Plaintiff, she would have had to take a reduced wage which would have not been necessary if her accommodation had been granted.  The reduced wage/hours would have also impacted her retirement and the arbitration she won as her hours were cut.  (Def. Exh "A" ¶ 13, Pl. Decl. ¶ 27).

4

As a result of the failure to reasonably accommodate Plaintiff, she had no choice but to take a leave on December 2015 and she retired on January 31, 2016 because the DOE did not reduce her commuting time which remained the same which was critical to Plaintiff's health. Thus, she was forced to retire and was constructively terminated. (Def. Exh "A" ¶ 16, Decl. ¶ 28).

Further, Plaintiff was aware of others (including Irene Rosa, Lisa Miller and Gina Ficente) who were provided requested changes in their schedules, despite only needing these changes for convenience, not because of a reasonable accommodation due to a serious medical accommodation like Plaintiff. Plaintiff knows this because she used to represent several teachers in multiple grievances. However, her reasonable accommodation request was denied. (Def. Exh "A" ¶ 17, Decl. ¶ 29)

In addition, the DOE never granted Plaintiff any accommodation as she did not request for her hours to be reduced and the only thing the DOE did after she requested the accommodation was to reduce her hours. (Def. Exh "A" ¶ 12, Decl. ¶ 30). Plaintiff merely requested that her location be closer to her residence or that her schedule be more compact. This request could have been easily accommodated as Ms. Mills could have done so as the Superintendent and head of the BALC site, where Plaintiff could have arranged the schedules she needed to preserve her strength. (Pl. Decl. ¶ 31). In addition, Plaintiff had seniority as a full-time teacher so even if some hours were filled in the class directory by any per session teacher, Ms. Mills could have changed those hours around and should have given them to Plaintiff based on seniority and on the reasonable accommodation request. (Pl. Decl. ¶ 32)

Plaintiff has firsthand knowledge of Ms. Mills flexibility and ability in changing schedules because she changed Plaintiff's schedule twice in 2012 and in 2015. However, after she lost the pro rata arbitration and the Defendant had to pay hundreds of thousands of dollars in past pay and

5

going forward, Mills did not want Plaintiff to have more hours and never spoke to her outside of consultation meetings. (Pl. Decl. ¶ 33). As another example, in June 2015 at hiring hall, Plaintiff accepted a program and Ms. Mills had to accommodate the additional 6 hours that Plaintiff won in arbitration, so she did so even though there was no job listed on any of the schedules or classes. She changed the hours from 9am-12pm to 9am-1:35pm. This was not reflected in any class directory. Thus, the DOE's excuse that Ms. Mills could not accommodate Plaintiff because there were no classes available is disingenuous and misleading. (Pl. Decl. ¶ 34). In sum, Ms. Mills changed hours when she needed to. In addition, as head of the BALC site, she could have arranged anything she wanted, a change of schedule, extending hours, etc. (Pl. Decl. ¶ 35)

As a result of the DOE's discriminatory conduct, Plaintiff was greatly damaged. (Pl. Decl. ¶ 36). Currently, Ms. Mills has been removed from the Department of Education's position as a superintendent after several years of combined UFT/ DOE supervision the bad administration and management of program and teachers she handled. (Pl. Decl. ¶ 37)

## POINT I

### DEFENDANT HAS THE BURDEN OF SHOWING THAT THERE ARE NO GENUINE MATERIAL ISSUES OF FACT AND PLAINTIFF IS ENTITLED TO ALL FAVORABLE INFERENCES

It is well settled that summary judgment is an inappropriate remedy whenever there are outstanding issues of fact which require resolution by a jury. This is precisely the case at bar. Civil Practice Law and Rules § 3212 reads, in pertinent part, as follows: [t]he [summary judgment] motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party ....the motion shall be denied if any party shall show facts sufficient to require

a trial of any issue of fact. CPLR 3212.  Summary judgment is a drastic remedy that deprives a litigant of his or her day in court.  Therefore, the party opposing a motion for summary judgment is entitled to all favorable inferences that can be drawn from the evidence submitted and the papers should be scrutinized carefully in a light most favorable to the non-moving party.  Assaf v. Ropog Cab Corp., 153 A.D.2d, 520, 544 N.Y.S. 2d 834 (1st Dept. 1989).

A motion for summary judgment should not be granted when there is any doubt as to the existence of a material, triable issue of fact.  Phillips v. Kantor & Co., 338 N.Y.S.2d 882, 31 N.Y.2d 307 (1972); Elzer v. Nassaul County, 111 A. D. 2d 212, 489 N. Y.S. 2d 246 (2nd Dept. 1985); Herman v. Powers, 103 A. D. 2d 992, 479 N.Y.S.2d 846 (3rd Dept. 1984).  In connection with a motion for summary judgment, the Court's function is to determine whether a material factual issue exists, not to resolve any existing factual issues.  United States v. Diebold Inc., 369 U.S. 654 (1962).  Where, as here, the non-movant bears the ultimate burden to prove at trial that the defendant discriminated against plaintiff, he may defeat the summary judgment motion by procuring sufficient specific facts to establish that there is a genuine issue of material fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Also, the party moving for summary judgment has the burden of showing the absence of genuine issue of material fact.  Weinberger v. Hynson, 412 U.S. 609 (1973).

Moreover, the court must accept as true, evidence presented by the party opposing the application, and the motion must be denied if there is any doubt as to the existence of a triable issue, or if there is even arguably such an issue.  Weiss v. Garfield, 21 A.D.2d 156, 249 N.Y.S.2d 458 (3rd Dept. 1964); Hotirigan v. McGarry, 106 A.D.2d 845, 484 N.Y.S.2d 243 (3rd Dept. 1984); Berhsaw v. Altman, 100 A.D.2d 642, 473 N.Y.S.2d 72 (3rd Dept. 1984).  Finally, on a motion for summary judgment, the Court's function is issue finding and not issue determination.  Esteve v.

Abad, 271 A.D.2d 725, 68 N.Y.S.2d 322 (1st Dept. 1947); Sillman v. Twentieth Century Fox F.

Corp., 3 N.Y.2d 395, 165 N.Y.S.2d 498 (1957).

## POINT II

**MATERIAL TRIABLE ISSUES OF FACT EXIST THAT PRECLUDE SUMMARY
JUDGMENT AS DEFENDANT DID NOT REASONABLY ACCOMMODATE
PLAINTIFF'S CHRONIC LYMPHOCYTIC LEUKEMIA**

### A.    Plaintiff set forth a prima facie case

It is well settled in the Second Circuit that disability discrimination claims under the ADA

are analyzed under the very familiar McDonnell-Douglas "burden-shifting" analysis.

In order to establish a prima facie case of disability discrimination under the ADA, a

plaintiff must establish that: "(1)plaintiff's employer is subject to the ADA; (2) plaintiff was

disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the

essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered

[an] adverse employment action because of her disability."  Jacques v. DiMarzio, Inc., 386 F.3d

192, 198 (2d Cir. 2004).  In addition, in order to establish a prima facie case of discrimination

arising from a failure to accommodate, a plaintiff must show that: "(1) plaintiff is a person with a

disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his

disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of

the job at issue; and (4) the employer has refused to make such accommodations."  McBride v.

BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009).  See also Noll v. Intern. Business

Machines Corp., 787 F. 3d 89, 94 (2d Cir 2015). (Internal citations and quotations omitted).

In the case at hand, there is no question that Plaintiff has a disability under the ADA

(chronic lymphocytic leukemia), that the DOE is an employer covered by the statute and that with

a reasonable accommodation and that she Plaintiff could have performed the essential functions of the job at issue. Id. Def. Exh "A", Pl. Decl. ¶ 1-23.

The only prong to consider for this Court is the fourth prong for which material issues of fact exist and thus, summary judgment is inappropriate. In sum, the DOE did not give Plaintiff any reasonable accommodations despite knowing of her disability and despite being able to reasonably accommodate her. Even though the DOE might have sent Plaintiff a letter stating that partial accommodation was granted, Plaintiff was not granted the two things she needed and asked for: a more consolidated schedule, and a schedule that will decrease a heavy work commute. In addition, due to the failure to accommodate, Plaintiff was greatly damaged as she was constructively terminated. She was left with no choice but to retire much earlier than she planned to. Def. Exh "A" ¶ 14-16, Pl. Decl. ¶ 23-28. Accordingly, as fully explained, *infra*, this case should be allowed to go forward because material issues of fact exist on the reasonable accommodation claim. Therefore, the motion should be denied in its entirety.

### B.       Defendant did not grant Plaintiff any accommodation

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to [, inter alia,] ... discharge of employees." 42 U.S.C. § 12112(a); see also Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir.2006). Discrimination in violation of the ADA includes, inter alia, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); see also Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir.2008). In addition, for the purposes of the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In light of this substantive standard, a plaintiff

makes out a prima facie case of disability discrimination[583 F.3d 97] arising from a failure to accommodate by showing each of the following:"(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir.2006) (*quoting* Rodal v. Anesthesia Group of Onondaga, P. C., 369 F.3d 113, 118 (2d Cir.2004)) (internal quotation mark omitted).  In this context, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"); see also Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 194 (3d Cir.2009) (noting that the ADA "only characterizes as unlawful discrimination an employer's failure to reasonably accommodate an `otherwise qualified individual' when that accommodation does not impose an undue hardship". McBride v. Bic Consumer Products Mfg. Co., Inc., 583 F.3d 92 (2nd Cir., 2009).  Whether or not an accommodation is reasonable is a "necessarily fact-specific" question that must be resolved on a case-by-case basis.  Wernick v. FRB, 91 F.3d 379, 385 (2d Cir. 1996).  Indeed, whether an accommodation is reasonable or not, is a question of fact, not a question of law.  Id.

In the case at hand, it is not disputed that on August 26, 2015, Plaintiff requested the following accommodation:

> "*reduced travel time with a position closer to her home or job hours more conducive to adequate rest/ decreased stress- will prevent absences at work as allows MD visits in her free time*."

Pl. Decl. ¶ 15-16, Def's Exh "A", Def's Exh "I".

In addition, it is also not disputed that the reasonable accommodation listed as the disability:

"*chronic lymphocytic leukemia on oral chemotherapy daily- decreased work commute as pt is fatigued and at high risk for infection with stressed schedule*."

Pl. Decl. ¶ 15-16, Def's Exh "A", Def's Exh "I".

Here, instead of accommodating Plaintiff, despite the ability to do so, Defendant retaliated and cut Plaintiff's hours and refused to grant her a more consolidated schedule.

By the plain language of the reasonable accommodation request, Plaintiff was seeking a shorter commute with a position closer to home ("*reduced travel time with a position closer to her home*"), or a more compact schedule so that she could visit her doctor in her spare time and have adequate rest ("*job hours more conducive to adequate rest/ decreased stress- will prevent absences at work as allows MD visits in her free time*"). Def's Exh "I". Here, Defendant granted Plaintiff none of the two things she was requesting to preserve her health. This was despite that the Medical Administration first reviewed Plaintiff's reasonable accommodation request and necessary documentation and deemed the reasonable accommodation to be "Medically warranted". Def. Exh "K". Nonetheless, by letter dated October 9, 2015, Defendant rejected Plaintiff's accommodation in full but interestingly worded the letter as a "partially approved" accommodation, where Plaintiff was supposedly granted a "reduced work schedule", which Plaintiff never asked for. Def. Exh. "M".

Notably, **nowhere in the reasonable accommodation request form does Plaintiff ever asks for a reduction in her work hours** [emphasis added]. See Def. Exh. "I" in full. In addition, even assuming *arguendo*, that the reasonable accommodation request could have been understood as a reduction of hours (which it does not and is a very generous argument), that will be a question

11

for the jury to decide and accordingly, not to be decided in a summary judgment motion.  Further, summary judgment should be denied as Plaintiff must have all favorable inferences which here at the very least create a material questions of fact.  See Def.'s exh "I", "K" and "M".

Moreover, as established and as further explained *infra*, Superintendent Mills could have easily accommodated Plaintiff and chose not to do so.  In fact, Mills had accommodated Plaintiff with no problem.  For example, Plaintiff had seniority as a full-time teacher so even if some hours were filled in the class directory by any per session teacher, Ms. Mills could have changed those hours around and should have given them to her based on seniority and on the reasonable accommodation request.   Pl. Decl. ¶ 32.   Plaintiff has first-hand knowledge of Ms. Mills' flexibility and ability in changing schedules because she changed her schedule twice in 2012 and in 2015.

For example, in June 2015 at hiring hall, Plaintiff accepted a program and Ms. Mills had to accommodate the additional 6 hours that Plaintiff won in arbitration, so she did so even though there was no job listed on any of the schedules or classes.  She changed Plaintiff's hours from 9am-12pm to 9am-1:35pm.  This was not reflected in any class directory.  Thus, the DOE's excuse that Ms. Mills could not accommodate Plaintiff because there were no classes available is disingenuous and misleading.   In sum, Ms. Mills changed hours when she needed to. In addition, as head of the BALC site, she could have arranged anything she wanted, a change of schedule, extending hours, etc.  Pl. Decl. ¶ 33-35.  Plaintiff was even aware of others (including Irene Rosa, and Lisa Miller) who were provided requested changes in their schedules, despite only needing these changes for convenience, not because of a reasonable accommodation due to a serious medical accommodation like Plaintiff's.  Plaintiff knows this because she used to represent several teachers in multiple grievances.  PL. Decl. ¶ 29.  However, here after Superintendent Mills lost a pro rata arbitration

and the Defendant had to pay hundreds of thousands of dollars in past pay and going forward, Mills did not want Plaintiff to have more hours and never spoke to her outside of consultation meetings. Pl. Decl. ¶ 33.  Indeed, Plaintiff was involved in an extensively arbitration that lasted many years.  Finally, after an uphill battle, she won additional 6 hours to add to her schedule (went from 30 to 36).  Obviously, defendant was aware of this as it was a party in such arbitration. Consequently, it would have made no sense whatsoever to reduce Plaintiff's work hours.

Put simply, it would not have been logical for Plaintiff to ask Defendant to take away the 6 hours Plaintiff fought so hard to obtain in an arbitration that lasted approximately 6 years. Def. Exh "C" p. 75-76.  Thus, the argument that the DOE interpreted Plaintiff's reasonable accommodation request as a request of reduction of hours (where no where in the request this is mentioned) is disingenuous and not credible, and is best a question of fact for the jury.

Therefore, summary judgment should be denied as Defendant did not grant any reasonable accommodation.

**C.     Defendant refused to engage in the interactive process, thus Plaintiff could not have abandoned a process that Defendant refused to engage in.**

 It is certainly true that an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA. See Mengine v. Runyon, 114 F.3d 415, 420-21 (3d Cir.1997). It is even possible, that a failure to engage in a sufficient interactive process where accommodation was, in fact, possibly constitutes prima facie evidence of discrimination on the basis of disability. See Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1116 (9th Cir.2000) (en banc), rev'd on other grounds, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002); Cravens, 214 F.3d at 1020-21; Fjellestad, 188 F.3d at 952; Taylor v. Phoenixville Sch.

Dist., 184 F.3d 296, 317-20 (3d Cir.1999). <u>McBride v. Bic Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92 (2nd Cir., 2009)

In <u>Parker</u>, the Second Circuit Court indicated that an employer's failure to make any accommodation for a disabled employee and its refusal even to consider potential accommodations proposed by the employee (i.e., refusal to engage in the interactive process contemplated by the ADA) could give rise to an inference that the employer took adverse employment action against the employee because of her disability. See 204 F.3d at 338. <u>McBride v. Bic Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92 (2nd Cir., 2009).

In the case at hand, at her deposition, Superintendent Mills plainly admitted that she failed to engage in the interactive process and admitted that she did not eve bother to ask questions about Wald's disability as set forth:

> Q.      Okay. Did you ever inquire about Ms. Wald's health after she made the reasonable accommodation request?
>
> A:      no.
>
> [1]Exh. "2" p. 60-61

In addition, Superintendent Mills, testified falsely at the deposition and stated that she had no previous knowledge about Plaintiff's reasonable accommodation request and also asserted that UFT representatives, such as Patty Crispino, never advised her about Plaintiff's reasonable accommodation:

> Q.      Do you know who is Patty [C]rispino?
>
> A.      Yes.
>
> Q.      Who is she?
>
> A.      She's a district UFT rep.

---

[1] All of Plaintiff's exhibits are attached to the declaration of Natalia Kapitonova, Esq.

Q.     Do you know who is Tom Bennett?

A.     No.

                    Exh. "2" p. 55

She further testidied:

Q.    Okay. Did Patty Crispino ever speak to you regarding Ms. Wald's reasonable
       accommodation request?

A.     No.

                    Exh. "2" p. 56

Counsel tried to clarify the question to make sure Mills was testifying truthfully, and Mills

replied the following:

Q.     I'm asking you only about Patty [C]rispino right now.

A:     That's what I was trying to answer, but I have nothing else to say.

Q.     When you said that you did not have a conversation with Ms. [C]rispino, what do
       you mean by this matter?

A.      About accommodation request

                    Exh. "2" p. 56


Furthermore, during the deposition, Mills also denied all knowledge of Plaintiff's

disability:

(Whereupon, accommodation request form was marked as Plaintiff's Exhibit 2 for
identification as of this date )

Q.     Okay. So I'm showing you now what has been marked as Plaintiff's Exhibit 2 for
       identification. Take a moment to review it. Do you recognize this document?

A.      No.

Q.     What is this document?

                    15

A.      This is a accommodation request form.

Q.      Made by who?

A.      Karen Wald.

Q.      Okay. Have you ever seen this document before?

A.      No.

Q.      Is this the first time you see this document?

A.       Yes.

Exh. "2" p. 31-32

Throughout her deposition, Mills continued to deny knowledge of Plaintiff's condition and

that she knew of Plaintiff's reasonable accommodation request prior to the filing of this action:

Q.      So before you saw the complaint, you knew that Ms. Wald made a reasonable accommodation request?

A.      Yes. I knew she made a request.

Q.      But you never knew why, correct?

A.      I don't know the details. *I just know that she wanted something closer to home*.

Q.      But you never read the accommodation request form?

A.      No. That was never shared with me.

Q.      Did you request it?

A.      No.

Q.      So you discussed about it, but you never requested the document. Is that correct?
A.      That's not my place to review the request.

Exh. "2" p. 35

Yet, despite all of Mill's assertions, Mill's statements were directly contradicted not only

16

by Plaintiff but also but Patty Crispino herself, the UFT representative, who submitted a declaration and stated the following:

"In September or early October 2015, on Wald's behalf, I contacted Superintendent Rose-Marie Mills on behalf of Wald to request that Mills assist Wald in her request for a schedule change.  I explained to Mills that Wald was very ill and requested that she agree to adjust her schedule to accommodate her needs. Mills did not ask any additional information, but simply responded "no" and said, "Wald could give up six hours on her schedule".

Crispino Decl. ¶2-4.

This not only directly addresses Mills' credibility but also directly sheds light onto her complete lack of interest and willingness in participating in the interactive process, in violation of the ADA.  Id.  Further, interestingly, Mills admits in her deposition that Plaintiff never asked for a reduction in her schedule.  Yet, this was the only thing the DOE granted Plaintiff as a purported accommodation:

A.    On this document it says 8/26/2015.

Q.    Thank you. For the two boxes that you read, does anywhere does it say that Ms. Wald is requesting less hours?

A.    The second box says reduce travel time with position or job hours for conducive to
       adequate person stress.

Q.    Does it say that she's requesting less hours?

A.    Not directly.

Q.    So the answer is no?

A.    All right.

Q.    You tell me.

A.    I guess it's no.

Exh. "2" p. 38

Here, Plaintiff was not granted a reasonable accommodation at all, and was instead granted a reduction of hours, which Superintendent Mills herself confirmed was not something Plaintiff was asking for.  Further, Defendant had no interest in engaging in the interactive process and plainly refused the accommodation, which was already approved by the medical department as medically warranted.  Defendant's exhibits I, K, M.

For these reasons, Defendant did not give Plaintiff any reasonable accommodation.  A reasonable accommodation cannot be interpreted as a reduction of hours that Plaintiff never asked for, that would have hurt Plaintiff's income and that would have been illogical for Plaintiff to even request as the DOE and especially Mills was aware that Plaintiff had fought in an arbitration for many years to deserve the right to add more hours to her schedule, which is exactly what the DOE took from her as soon as she requested the accommodation.  The reduction in hours did not shorten Plaintiff's commute or make her schedule more compact and thus did nothing at all to accommodate her. At best, this will create a material issue of fact that is only for the jury to decide and accordingly, summary judgment should be denied.

## **POINT III**

### **PLAINTIFF WAS RETALIATED AGAINST FOR REQUESTING A REASONABLE ACCOMODATION FOR HER CHRONIC LYMPHOCYTIC LEUKEMIA BY BEING CONSTRUCTIVELY DISCHARGED WHEN SHE WAS PLANNING TO RETIRE YEARS LATER**

#### **A. Retaliation under the ADA**

To establish a *prima facie* case of retaliation under the ADA,  a plaintiff must show that 1) she was engaged in an activity protected by the ADA; (2) Defendant  was aware of this activity; (3) Defendant  took adverse employment actions against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.  <u>See</u>

Jackson v. Elmhurst Hosp. Ctr., No. 10 Civ. 5248, 2012 U.S. Dist. LEXIS 34508 (E.D.N.Y. March 14, 2012). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to establish legitimate non-retaliatory reasons for its actions. Cosgrove, 9 F.3d at 1039. Finally, the plaintiff must then prove that the proffered reasons are pretext for retaliation. Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

In the case at hand, Plaintiff has set forth a prima facie case of retaliation due to her ADA reasonable accommodation request.  She clearly engaged in protective activity by submitting her medically warranted reasonable accommodation request, the Defendant was aware of this activity, and DOE retaliated against her by reducing her hours and consequently her payment, which is not something she ever asked.  In addition, the Doe did not accommodate her by granting her any schedule whatsoever that would reduce her heavy commute.  As a consequence, she was constructively terminated because had she accepted the reduction in hours, she would have received much less payment and this would have affected her retirement.  Def. Exh "A", Pl.'s Decl.

**B.  Constructive Discharge**

In evaluating employment discrimination claims the concept of constructive discharge is applied.  Martin v. Citibank, N.A., 762 F.2d 212, 216-17 (2d Cir. 1985); Pena v. Brattleboro Retreat, 702 F.2d 322, 325-26 (2d Cir. 1983)(ADEA).  When a constructive discharge is found, an employee's resignation is treated, for the purposed of establishing a prima facie case of employment discrimination, as if the employer had actually discharged the employee.  Pena, 702 F.2d at 325.  Working conditions must be viewed, "as a whole," because "[a] reasonable person encounters life's circumstances cumulatively and not individually."  Chertkova v. Connecticut General Life Insurance Co., 92 F.3d 81 (2d Cir. 1996).

"A voluntary resignation is not an adverse employment action unless the employee was constructively discharged." <u>Pellier v. British Airways, Plc.</u>, 2006 WL 132073 *4 (W.D.N.Y. 2006). "A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." <u>Lopez v. SB Thomas, Inc.</u>, 831 F.2d 1184 (2d Cir. 1987); <u>Pena</u>, 702 F.2d at 325; *quoting* <u>Alicea Rosado v. Garcia Santiago</u>, 562 F.2d 114, 119 (1st Cir. 1977).

Plaintiff has adequately set forth that she was subject to a constructive discharge from her position with the DOE. There is a direct connection with the DOE reducing Plaintiff's hours and denying the accommodation and reducing her commute time by refusing to reschedule her to a close location to her home and her constructive discharge. Due to Defendant's actions, Plaintiff was left with no choice but to retire much earlier than expecting. Not only was the reduction in payment an adverse employment action but the schedule the DOE continued to impose on her after her reasonable accommodation was made was dangerous to her health.

More specifically, Plaintiff only requested either a schedule in schools closer to her home, or more consolidated hours. Plaintiff also applied for a hardship transfer on September 26, 2015 for the same medical reasons which was denied. Plaintiff resides on 17th Street and 3rd Avenue in Manhattan and she had her job assignment with the DOE in Bedford-Stuyvesant, Brooklyn for five mornings per week from 9am to 1:40pm and then from 5pm to 8:40pm (4 nights per week) at a school location on 35th street and 8th Ave. Commuting was about 3 or more hours/day which allowed little "recuperation "time or time for medical appointments. (Decl. ¶ 18-20). The DOE was aware that Plaintiff was unable to perform this assignment before the semester started, yet still refused to accommodate her request for an assignment with a full-time consolidated hour or in a location closer to home. Ms. Mills could have changed Plaintiff's schedule around as she did so

in previous years and chose not to do so.  For example, Ms. Mills had the ability to extend hours in one location, allocate hours from per session teachers and create another class when needed. (Decl. ¶ 21-12) .  In addition, when Plaintiff requested the accommodation, the semester had not yet started. However, by letter dated October 8, 2015, Plaintiff's medical accommodation request was not approved.  Although the medical accommodation was approved by the medical department, Ms. Mills did not consolidate Plaintiff's hours nor gave her classes closer to home which would reduce her commute.  Ms. Mills did not engage in the interactive process to reasonably accommodate Plaintiff. (Decl. ¶ 24).  The DOE instead reduced Plaintiff's hours, something she was not actually requesting. Plaintiff's request for an assignment to school "closer to home" was not accommodated and her hours were not compacted.  (Decl. ¶ 26)

Here, because of the failure to reasonably accommodate Plaintiff, she would have had to take a reduced wage which would have not been necessary if her accommodation had been granted. The reduced wage/hours would have also impacted her retirement and the arbitration she won as her hours were cut.  (Decl. ¶ 27).  Thus, as a direct result of the failure to reasonably accommodate Plaintiff, she had no choice but to take a leave on December 2015 and she retired on January 31, 2016 because the DOE did not reduce her commuting time  or consolidate her schedule which remained the same which was critical to Plaintiff's health.   Thus, she was forced to retire and was constructively terminated.  (Decl. ¶ 28).

Accordingly, for all the aforementioned reasons, Plaintiff was compelled to retire after the DOE refused to grant her any reasonable accommodation for her chronic lymphocytic leukemia. In addition, the reduction in hours the DOE "granted" Plaintiff did not reasonably accommodate any of her needs as the reduced schedule did not decrease her commute time as she continued to be assigned to teach in two split locations in Brooklyn and Manhattan and did not compress any

of her working hours to allow Plaintiff to recuperate and use her free time to see any doctor.  Thus, the DOE completely failed to reasonably accommodate Plaintiff and to grant her any of the request she requested due to her grave illness.  Therefore, the summary judgment should be denied in its entirety and Plaintiff's case should be allowed to go forward.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

Dated: New York, New York
      January 17, 2015

                                          Respectfully submitted,
STEWART LEE KARLIN LAW GROUP, PC.


 s/*Natalia Kapitonova*
NATALIA KAPITONOVA
STEWART LEE KARLIN
Attorney for Plaintiff
111 John St., 22 Fl
New York, NY 10038
(212) 792-9670